# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JANE L. DEUTSCH, Executrix of the Estate :    No.
of FRANK W. DEUTSCH, III,                :
                 **Plaintiff**     :
                             :
             **v.**                 :
                             :
THE TORO COMPANY,            :
                  **Defendant**    : **JURY TRIAL DEMANDED**

## <u>COMPLAINT</u>

Plaintiff, Jane L. Deutsch, Executrix of the Estate of Frank W. Deutsch, III, by and through counsel, Cohen, Feeley, Altemose & Rambo, P.C., hereby brings this Complaint against Defendant, The Toro Company, and in support hereof, avers as follows:

## PARTIES

1.  Plaintiff, Jane L. Deutsch ("Plaintiff") is an adult individual who resides in the State of Florida at 70 Long Meadow Place Rotunda West, FL  33947 and who is a citizen of the Commonwealth of Pennsylvania.

2.  Plaintiff, Jane L. Deutsch, is the widow of Frank W. Deutsch, III ("Decedent"), who died testate on September 3, 2019, and who resided with Plaintiff at all relevant times prior to his death.

3.  Plaintiff, Jane L. Deutsch, is the Executrix of the Estate of Decedent, having been duly appointed same in Decedent's Will and also by the Register of Wills of Lehigh County, Pennsylvania on September 18, 2019.

4.  Pursuant to Probate, Estates and  Fiduciaries Code, 20 P.S. § 3373, and The Survival Act, 42 P.S. § 8302, all rights of a Decedent, including causes of action for injuries and/or death, and all actions to enforce said rights shall be brought by the personal representative of the Decedent.

5.  Pursuant to the Wrongful Death Act, 42 P.S. § 8301, an action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.

6.  Pursuant to the Wrongful Death Act, 42 P.S. § 8301, the right of action created by the Act shall exist for the benefit of the spouse, children or parents of the deceased, and the damages recovered shall be distributed to the beneficiaries in the proportion they would take the personal estate of the decedent in the case of intestacy and without liability to creditors of the deceased person under the statutes of this Commonwealth.

7.  Pursuant to Pa.R.C.P. 2202(a), Wrongful Death actions shall be brought by the personal representative of the Decedent for the benefit of those persons entitled by law to recover damages for such wrongful death.

8.  Plaintiff, Jane L. Deutsch, in her capacity as Executrix of the Estate of Decedent, is the person entitled under and by virtue of the Probate, Estates and Fiduciaries Code, 20 P.S. § 3373; the Survival Act, 42 P.S. § 8302, the Wrongful Death Act, 42 P.S. § 8301, and Pennsylvania Rule of Civil Procedure 2202 to bring and recover

2

damages for a Decedent's injuries and/or death in a Survival Action on behalf of the Estate of Decedent and to bring and recover damages in Wrongful Death action on behalf of the wrongful death beneficiaries of Decedent, who in this matter is Plaintiff.

9.   Defendant, The Toro Company ("Defendant" or "Toro"), is a corporation, partnership, limited partnership, incorporated association, unincorporated association, limited liability corporation, limited liability partnership or other business entity that it is a citizen of the State of Minnesota where it maintains a registered office and regular place of business at 8111 Lyndale Avenue South, Bloomington, MN  55420.

10.  At all times relevant hereto, Defendant regularly and continuously did business within the Commonwealth of Pennsylvania.

11.  At all times relevant hereto, Defendant was registered with the Pennsylvania Department of State as a foreign corporation registered and licensed to do business within the Commonwealth of Pennsylvania under Entity No.  2046351.

12.  At all times relevant hereto, Defendant acted and/or failed to act by itself and by and through its agents, agencies, servants, workmen, divisions, subsidiaries and/or employees acting within the course and scope of their employment and in furtherance of Defendant's business interests.

## JURISDICTION AND VENUE

13.    This Court has diversity jurisdiction under Section 1332(a)(1) of Title 28 of the United States Code, 28 U.S.C. Section 1332(a)(1) and (a)(2).

14.  This Court has venue over this action pursuant to 28 U.S.C. Section 1391(b)(2).

**FACTS**

15. At all times relevant hereto, Plaintiff was employed by CAMRRA, LLC d/b/a Locust Valley Golf Club ("CAMRRA, LLC").

16. At all times relevant hereto, CAMRRA, LLC was the owner and operator of Locust Valley Golf Club, an eighteen hole golf course located at 5525 Locust Valley Road, Coopersburg, PA 18036.

17. At all times relevant hereto, Decedent was acting in the course and scope of his employment for CAMRRA, LLC at the Locust Valley Golf Club.

18. At all times relevant hereto, Defendant, was engaged in the business of designing, fabricating, manufacturing, marketing, advertising, constructing, distributing, supplying, selling, maintaining, installing, servicing, repairing, inspecting and/or leasing commercial sit-down mowers and other three and four wheel vehicles, designed and manufactured specifically for the golf industry, including but not limited to commercial greens mowers, rough mowers and fairway mowers.

19. At all times relevant hereto, Defendant designed, fabricated, manufactured, marketed, advertised, constructed, distributed, supplied, sold, maintained, installed, serviced, repaired, inspected and /or leased the Greensmaster 3100 commercial greens mowers.

20. At all times relevant hereto, Defendant designed, fabricated, manufactured, marketed, advertised, constructed, distributed, supplied, sold, maintained, installed, serviced, repaired, inspected and /or leased the Greensmaster 3100 commercial greens mowers with the intent that said mowers be used to cut the grass on greens and tee

4

boxes and that it be used by the user to transit other areas of the golf course to cut greens and tee boxes, including sloped areas of the golf course.

21.  At all times relevant hereto when Defendant designed, fabricated, manufactured, marketed, advertised, constructed, distributed, supplied, sold, maintained, installed, serviced, repaired, inspected and /or leased the Greensmaster 3100 commercial greens mowers, it was reasonably foreseeable to Defendant that said mowers would be used to cut the grass on greens and tee boxes and that it would be used by the user to transit other areas of the golf course to cut greens and tee boxes, including sloped areas of the golf course.

22.  Prior to September 3, 2019, CAMRRA, LLC purchased a Greensmaster 3100 commercial greens mower, Serial #04353-70411 (the "subject product"), for use by Decedent and its employees at the Locust Valley Golf Club.

23.  On or about September 3, 2019, Decedent was operating the subject product as intended, or in a manner that was reasonably foreseeable to Defendant, when the product slid down a bank and rolled over, striking Decedent, pinning Decedent beneath it and with his head below water, causing Decedent to suffer severe injuries that caused his death.

24.  At all times relevant hereto, Defendant knew, or should have known, or it was reasonably foreseeable to Defendant, that users of the Greensmaster 3100 commercial lawn mower, other commercial mowers and other commercial three and four wheel products that Defendant  designed, fabricated, manufactured, marketed, advertised, constructed, distributed, supplied, sold, maintained, installed, serviced, repaired,

inspected and /or leased, were involved in rollover accidents when using the products as intended by Defendant or in a manner that was reasonably foreseeable to Defendant.

25.   At all times relevant hereto, Defendant knew, or should have known, or it was reasonably foreseeable to Defendant, that  users of the Greensmaster 3100 commercial lawn mower, other commercial mowers and other commercial three and four wheel products that Defendant  designed, fabricated, manufactured, marketed, advertised, constructed, distributed, supplied, sold, maintained, installed, serviced, repaired, inspected and /or leased, were involved in rollover accidents when using the products as intended by Defendant or in a manner that was reasonably foreseeable to Defendant.

26.   At all times relevant hereto, the subject product was not designed, fabricated, manufactured, marketed, advertised, constructed, distributed, supplied, sold, maintained, installed, serviced, repaired, inspected and /or leased by Defendant with a rollover protection system, consisting of, inter alia, a roll-bar or frame and seat belt (a "ROPS System"),  a safety system that is designed to provide a safe environment for users and to prevent the occurrence of severe injuries or death to the user by preventing a rollover, limiting the extent of the rollover and by protecting the user from harm in the event of a rollover in that, *inter alia*, the ROPS System stops or impedes the rotation and actual rollover of the product, prevents the user from being ejected from the seat and being crushed or pinned by the mower during a rollover, prevents the user from being crushed or pinned by the mower during a rollover if the operator remains in or at the seat, prevents the user from impacting the mower body during a rollover, prevents the user from being ejected from the mower and striking objects other than the mower after being

ejected from the mower, and enables the user to safely extricate himself from the product in the event of a rollover.

27.   At all times relevant hereto, rollover accidents involving commercial golf course mowers and tractors, including but not limited to those designed, fabricated, manufactured, marketed, advertised, constructed, distributed, supplied, sold, maintained, installed, serviced, repaired, inspected and /or leased by Defendant such as the 3100 Greensmaster commercial greens mower that lacked ROPS Systems were the leading cause of death and serious injuries to users of said products.

28.   At all times relevant hereto, Defendant knew, or should have known, that rollover accidents involving commercial golf course mowers and tractors, including but not limited to those designed, fabricated, manufactured, marketed, advertised, constructed, distributed, supplied, sold, maintained, installed, serviced, repaired, inspected and /or leased by Defendant such as the 3100 Greensmaster commercial greens mower that lacked ROPS Systems were the leading cause of death and serious injuries to users of said products.

29.   At all times relevant hereto the inclusion of ROPS Systems as part of the design, manufacture, sale and distribution of said products prevented or limited the extent of a rollover as aforesaid, preventing serious injuries and deaths, and also essentially eliminated the deaths and serious injuries as aforesaid that occur during rollover incidents with identical products lacking the ROPS System.

30.   At all times relevant hereto, Defendant knew, or should have known, that the inclusion of ROPS Systems as part of the design, manufacture, sale and distribution of said products prevented or limited the extent of a rollover as aforesaid, preventing

serious injuries and deaths, and also essentially eliminated the deaths and serious injuries as aforesaid that occur during rollover incidents with identical products lacking the ROPS System.

31.   At all times relevant hereto, ROPS systems were commercially available to Defendant and it was economically and technically feasible for Defendant to design, manufacture and install a ROPS System as part of the design, manufacture, sale and distribution of the subject product.

32.   At all times relevant hereto, Defendant knew, or should have known, the purposes and success of ROPS systems in preventing or limiting rollovers and protecting the users from serious injuries or death during rollovers, and knew or should have known, that ROPS systems were commercially available and that it was economically and technically feasible for Defendant to design, manufacture and install a ROPS System as part of the design, manufacture, sale and distribution of the subject product.

33.   At all times relevant hereto, Defendant knew, or should have known that Defendant's design, fabrication, manufacturing, marketing, advertising, constructing, distributing, supplying, and/or leasing of the Greensmaster 3100 commercial greens mower, including the subject product, without a ROPS system created a severe and completely unnecessary and unjustified risk of bodily injury and death to users thereof while engaged in the intended or reasonably foreseeable use of the product.

34.   At all times relevant hereto, Defendant designed, fabricated, manufactured, marketed, advertised, constructed, distributed, supplied, sold, maintained, installed, serviced, repaired, inspected and /or leased the Greensmaster 3100 commercial greens

mower, including the subject product, without the ROPS System in conscious disregard of said unnecessary and unjustified risk in order to increase profits.

35.    The subject product was designed, manufactured, distributed, marketed, advertised, constructed, installed, serviced, leased and sold by Defendant with dangers to the intended, ordinary, reasonable or reasonably foreseeable user or consumer while using the product in its intended, ordinarily, reasonable and reasonably foreseeable uses, including but not limited to the lack of a ROPS System creating an unnecessary and unjustifiable risk of the user suffering severe injury or death from a rollover.

36.    At all times relevant hereto, the aforesaid dangers were unknowable and unacceptable to the average or ordinary consumer using the subject product in the intended, reasonable and reasonably foreseeable uses.

37.    At all times relevant hereto, Defendant knew, or should have known, of the existence of the aforesaid dangers and that the aforesaid dangers were unknowable and unacceptable to the average or ordinary consumer using the subject product in the intended, reasonable and reasonably foreseeable uses.

38.    At all times relevant hereto, a reasonable person would conclude that the probability and seriousness of harm created by the aforesaid dangers to the intended, ordinary, reasonable or reasonably foreseeable user or consumer using the subject product in its intended, reasonable and reasonably foreseeable use outweighed the burden or costs of Defendant taking precautions to eliminate or substantially reduce the likelihood that said dangers would present themselves to the intended, ordinary or reasonably foreseeable users while using the subject product, in its intended, reasonable and reasonably foreseeable uses.

39.  At all times relevant hereto, Defendants knew, or should have known , that a reasonable person would conclude that the probability and seriousness of harm created by the aforesaid dangers to the intended, ordinary, reasonable or reasonably foreseeable user or consumer using the subject product in its intended, reasonable and reasonably foreseeable use outweighed the burden or costs of Defendant taking precautions to eliminate or substantially reduce the likelihood that said dangers would present themselves to the intended, ordinary or reasonably foreseeable users while using the subject product, in its intended, reasonable and reasonably foreseeable uses.

40.  Because the subject product was designed, manufactured, distributed and sold with the existence of the aforesaid dangers which were unknowable and unacceptable to the average or ordinary consumer using the subject product in the intended, reasonable and reasonably foreseeable uses of the product, and because a reasonable person would conclude that the probability and seriousness of harm created by the aforesaid dangers to the intended, ordinary, reasonable or reasonably foreseeable user or consumer using the using the product in its intended, reasonable and reasonably foreseeable use outweighed the burden or costs of Defendant taking precautions to eliminate or substantially reduce the likelihood that said dangers would present themselves to the intended, ordinary or reasonably foreseeable users while using the subject product, in its intended, reasonable and reasonably foreseeable uses, the subject product was designed, manufactured, distributed and sold in a defective condition unreasonably dangerous to the intended, ordinary or reasonably foreseeable users while using the product in its intended, reasonable and reasonably foreseeable uses.

41.   At all times relevant hereto, Defendant knew, or should have known, that because the subject product was designed, manufactured, distributed and sold with the existence of the aforesaid dangers which were unknowable and unacceptable to the average or ordinary consumer using the subject product in the intended, reasonable and reasonably foreseeable uses of the product, and because a reasonable person would conclude that the probability and seriousness of harm created by the aforesaid dangers to the intended, ordinary, reasonable or reasonably foreseeable user or consumer using the using the product in its intended, reasonable and reasonably foreseeable use outweighed the burden or costs of Defendant taking precautions to eliminate or substantially reduce the likelihood that said dangers would present themselves to the intended, ordinary or reasonably foreseeable users while using the subject product, in its intended, reasonable and reasonably foreseeable uses, the subject product was designed, manufactured, distributed and sold in a defective condition unreasonably dangerous to the intended, ordinary or reasonably foreseeable users while using the product in its intended, reasonable and reasonably foreseeable uses.

42.   The aforesaid dangers which rendered the subject product defective and unreasonably dangerous were present in the subject product at the time when said product left the possession and/or control of all Defendant.

43.   At all times relevant hereto, Defendant knew, or should have known, that the aforesaid dangers which rendered the subject product defective and unreasonably dangerous, were present in the subject product at the time when said product left the possession and/or control of Defendant.

11

44.   At all times relevant hereto, Defendant designed, manufactured, distributed and sold the subject product, with knowledge of, or in conscious disregard of the defective and unreasonably dangerous condition of the subject product and with knowledge of, or in conscious disregard of the severe risk of harm existing thereby to the intended, ordinary, reasonable and reasonably foreseeable user or consumer using the product in its intended, reasonable and reasonably foreseeable uses.

45.   At all times relevant hereto, alternative feasible designs existed for the subject product that would have prevented the rollover accident itself and the and the injuries caused to Decedent and his death therefrom, and even if the rollover accident itself still would have occurred, the injuries caused to Decedent and this death therefrom, that would have rendered the subject product safe and not unreasonably dangerous for its intended, reasonable and reasonably foreseeable uses by the intended, ordinary, reasonable and reasonably foreseeable user or consumer.

46.   At all times relevant hereto, all Defendants knew, or should have known, that alternative feasible designs existed for the subject product, that would have prevented or limited the rollover and protected the user from suffering severe injuries or death in the event of rollover and that would have rendered the subject truck, including the Fifth Wheel, safe and not unreasonably dangerous for its intended, reasonable and reasonably foreseeable uses by the intended, ordinary, reasonable and reasonably foreseeable user or consumer.

47.   At all times relevant hereto, all Defendants designed, manufactured, distributed and sold the subject product, with knowledge of, or in conscious disregard of the existence of alternative feasible designs for the subject that would have prevented or

limited the rollover and protected the user from suffering severe injuries or death in the

event of a rollover and that would have rendered the subject product safe and not

unreasonably dangerous for its intended, reasonable and reasonably foreseeable uses

by the intended, ordinary, reasonable and reasonably foreseeable user or consumer, and

with knowledge of, or in conscious disregard of the severe risk of harm existing to the

intended, ordinary, reasonable and reasonably foreseeable user or consumer using the

product in its intended, reasonable and reasonably foreseeable uses absent the

implementation of the alternative feasible designs.

48.   The defective and unreasonably dangerous condition of the subject product

was the direct and proximate cause of Decedent's injuries and death and Plaintiff's

damages as shall be more fully set forth at length below.

### COUNT I

**Jane L. Deutsch, Executrix of the Estate of Frank W. Deutsch, III
v.
The Toro Company**

### (NEGLIGENCE)

### (SURVIVAL ACTION)

49.   Plaintiff, Jane L. Deutsch, Executrix of the Estate of Frank W. Deutsch, III,

incorporates the preceding paragraphs by reference as if fully set forth at length herein.

50.   The injuries and damages to Plaintiff were directly, proximately, substantially,

and legally caused by the carelessness, negligence, gross negligence, and recklessness

of Defendant, The Toro Company, which consisted of, *inter alia*, the following:

(a).  Designing, manufacturing, marketing, distributing, supplying, marketing,
advertising, maintaining, installing, servicing, repairing, leasing and/or selling said
subject product, in the defective and unreasonably dangerous condition, when

Defendant knew, or should have known, of the defective and unreasonable dangerous condition;

(b).  Designing, manufacturing, marketing, distributing, supplying, advertising, maintaining, servicing, installing, repairing, leasing and/or selling said subject product, in the defective and unreasonably dangerous condition, when Defendant would have discovered said condition upon reasonable inspection, testing and analysis and eliminated said defective and unreasonably dangerous condition;

(c).  Designing, manufacturing, marketing, distributing, supplying, advertising, maintaining, servicing, repairing, installing, leasing and/or selling said subject product, when Defendants knew, or should have known of the defective and unreasonable dangerous condition thereof, when Defendant did not incorporate the state of the art in science, engineering, and in similar product manufacturing industries;

(d).  Designing, manufacturing, advertising, marketing, distributing, advertising, supplying, maintaining, servicing, installing, repairing, leasing and/or selling said subject product, without adequate instructions when Defendant knew, or should have known that the lack of adequate instructions rendered said subject product, defective and unreasonably dangerous;

(e).  Failing to warn or properly and adequately warn Decedent, and others similarly situated, of the defective and unreasonable dangerous condition as aforesaid of said subject product, of which Defendant knew, or should have known;

(f).  Failing to instruct or properly and adequately instruct the Decedent and others similarly situated, in the safe use of said subject product;

(g).  Failing to inspect or properly and adequately inspect the said subject product, for the presence of the aforesaid defective and unreasonably dangerous condition;

(h).  Failing to design, manufacture, install, maintain, lease, service, distribute and/or maintain said subject product, in a safe condition that was safe and not unreasonably dangerous;

(i).  Failing to repair the defective and unreasonably dangerous condition of said subject product, for defective and unreasonably dangerous condition when Defendant knew, or should have known, of the defective and unreasonably dangerous condition;

(j).  Failing to timely and properly repair the defective and unreasonably dangerous condition of the subject product, of which Defendant knew, or should have known;

(k).  Failing to design, manufacture, distribute, sell, lease, maintain, and distribute the subject product with a ROPS System that it was crashworthy;

(l).  Violating various statutes, codes, ordinances, rules and regulations of the United States of America, the Commonwealth of Pennsylvania and other local governing bodies;

(m).  Failing to hire, employ and/or promote various agents, servants, workmen and/or employees with the responsibility and obligation to properly install, inspect,

14

service, design, manufacture,  maintain, train, instruct and warn users regarding the use and dangers thereof and repair the subject product;

(n).  Failing to use reasonable care in hiring, employing and/or promoting various agents, servants, workmen and/or employees who had the responsibility and obligation to properly supply, manufacture, design, inspect, install, maintain, service, repair, instruct, train and warn users regarding the use and dangers of the subject product, and sell the Subject product;

(o).  Permitting the various agents, servants, workmen and/or employees who had the responsibility and obligation to properly design, install, manufacture, sell, inspect, maintain, service, sell, install, and/or repair said subject product, and instruct, train and warn users regarding the use and dangers thereof to continue to work as agents, servants, workmen and/or employees, when said Defendants knew, or should have known, that said agents, servants, workmen and/or employees were unable to, refusing to and/or incapable of properly performing said requirements of their respective employments;

(p).  Failing to establish procedures and programs to determine whether employees and/or potential employees charged with the responsibility and obligation to properly design, manufacture, sell, inspect, distribute, install, maintain, repair and service said subject product, and to instruct, train and warn users regarding the use and dangers thereof were fit, capable of, or actually properly performing the requirements of their respective employment;

(q).  Failing to create policies, procedures, rules and programs in connection with the design, manufacture, sale, inspection, distribution, installation, maintenance, repair and service of said subject product, that were necessary in order to ensure that said Subject product, was safe for its intended and reasonably foreseeable uses, when Defendant knew, or should have known, of said failure and the severe risk of harm to users created by said failure;

(r).  Failing to follow or violating Defendant's policies, procedures, rules and programs in connection with the design, manufacture, sale, inspection, distribution, installation, maintenance, repair and service of said subject product, that were necessary in order to ensure that said Subject product, was safe for its intended and reasonably foreseeable uses, when Defendant knew, or should have known, of said failure and the severe risk of harm to users created by said failure;

(s).  Failing to communicate to Defendant's employees and all intended or reasonably foreseeable users Defendant's policies, procedures, rules and programs in connection with the design, manufacture, sale, inspection, distribution, installation, maintenance, repair and service of said subject product, that were necessary in order to ensure that said subject product, was safe for its intended and reasonably foreseeable uses, when Defendant knew, or should have known, of said failure and the severe risk of harm to users created by said failure;

(t).  Failing to enforce Defendant's policies, procedures, rules and programs in connection with the design, manufacture, sale, inspection, distribution, installation, maintenance, repair and service of said subject product, that were necessary in

order to ensure that said subject product, was safe for its intended and reasonably foreseeable uses, when Defendant knew, or should have known, of said failure and the severe risk of harm to users created by said failure;

(u).  Designing, manufacturing, advertising, marketing, distributing, supplying, maintaining, servicing, installing, repairing, leasing, formulating, processing and/or selling the subject product,  with reason to know of, and/or with reckless indifference to the existence of the defects, when Defendant knew, or should have known of its negligent, careless, reckless and intentional conduct set forth above and the high degree of risk of harm posed to the user as a result thereof;

(v).  Failing to perform hazard, safety, fault tree and risk/utility analyses upon the subject product, when the performance of said analyses would have uncovered the defective and unreasonably dangerous condition;

(w).  Failing to properly perform hazard, safety fault tree and risk/utility analyses upon the subject product, when the performance of said analyses would have uncovered the defective and unreasonably dangerous condition;

(x).  Improperly ignoring or disregarding the results of hazard, safety, fault tree and risk/utility analyses which identified the existence of the dangerous and unreasonably dangerous condition of the subject product;

(y).  Acting negligent, careless and reckless as set forth in paragraphs (a) through (x) above and all averments preceding Count I above with knowledge of, or in conscious disregard of the severe risk of harm caused to intended, ordinary, reasonable or reasonably foreseeable users or consumers using the subject product, as intended, in a reasonable or reasonably foreseeable manner by Defendant's negligent, careless and reckless conduct;

(z).  Undertake, gratuitously or for consideration, to perform the activities set forth in paragraphs (a) through (x) above that Defendant should have engaged in as part of the design, manufacture, sale, installation, inspection, distribution, maintenance, repair and servicing of said subject product, and fail to perform said duties when such failure increased the risk of harm to Decedent and/or Decedent reasonably relied upon Defendant's compliance with said duties by using said product.

51.  Solely as a result of the carelessness, negligence, gross negligence and recklessness of Defendant as aforesaid, Decedent was caused to suffer injuries to his bones, joints, muscles, tendons, blood vessels and soft tissues throughout his entire body, both internally and externally, including, but not limited to blunt force trauma injuries and drowning injuries that were the proximate cause of his death and for which

Plaintiff, as Executrix of the Estate of Decedent, has a claim for damages under the Survival cause of action against Defendant.

52.  As a result of all of the above injuries, Decedent experienced conscious pain and suffering, including physical pain, mental anguish, anxiety, loss of life's pleasures, bodily disfigurement, embarrassment and humiliation, up to the time of his death, and for which Plaintiff, as Executrix of the Estate of Decedent, has a claim for damages under the Survival cause of action against Defendant.

53.  As a result of the above injuries and Decedent's death therefrom, Plaintiff,  as Executtrix of the Estate of Decedent, was obligated to expend various and diverse sums of money for medicine and medical treatment in an effort to cure the above injuries prior to the death of Decedent; and Plaintiff has been obligated to expend funeral expenses and expenses of administration of the Estate of Decedent following his death, and for which Plaintiff, as Executrix of the Estate of Decedent, has a claim for damages under the Survival cause of action against Defendant.

54.  As a result of the above injuries and Decedent's death therefrom, Decedent experienced a complete loss of future earnings and earning capacity, and for which Plaintiff, as Executrix of the Estate of Decedent, has a claim for damages under the Survival cause of action against Defendant.

55.  Defendant's conduct as aforesaid that caused Decedent's injuries and death therefrom constitute outrageous conduct, and for which Plaintiff, as Executrix of the Estate of Decedent, has a claim for punitive damages under the Survival cause of action against Defendant.

WHEREFORE, Plaintiff, Jane L. Deutsch, Executrix of the Estate of Frank W. Deutsch, III, demands judgment against Defendant, The Toro Company, in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00) plus delay damages, costs of suit and punitive damages.

## COUNT II

### Jane L. Deutsch, Executrix of the Estate of Frank W. Deutsch, III
### v.
### The Toro Company

### (STRICT LIABILITY)

### (SURVIVAL ACTION)

56. Plaintiff, Jane L. Deutsch, Executrix of the Estate of Frank W. Deutsch, III, incorporates by reference all preceding paragraphs of this Complaint as if fully set forth at length herein.

57. Defendant, The Toro Company, designed, manufactured, distributed, marketed, advertised, constructed, installed, serviced, leased and sold the subject product.

58. The subject product, was designed, manufactured, distributed, marketed, advertised, constructed, installed, serviced, leased and sold by Defendant with the aforesaid dangers to the intended, ordinary, reasonable or reasonably foreseeable user or consumer while using the product in its intended, ordinarily, reasonable and reasonably foreseeable uses.

59. The subject product, reached the user or consumer, Decedent, without substantial change in the condition in which it was designed, manufactured, distributed, marketed, advertised, constructed, installed, serviced, leased and sold by Defendant.

18

60.  Defendant expected, intended and reasonably foresaw that said subject product, would reach the user or consumer, Decedent, without substantial change in the condition in which it was designed, manufactured, distributed, marketed, advertised, constructed, installed, serviced, leased and sold by Defendant and in which it left Defendant's possession or control.

61.  The use of the subject product, by Decedent and his employer at or about the time of the incident was intended, expected, reasonable and reasonably foreseeable to Defendant and for the purposes and in such a manner intended, expected by and reasonable and reasonably foreseeable to Defendant.

62.  At all times relevant hereto, the aforesaid dangers were unknowable and unacceptable to the average or ordinary consumer using the subject product, in the intended, reasonable and reasonably foreseeable uses.

63.  At all times relevant hereto, a reasonable person would conclude that the probability and seriousness of harm created by the aforesaid dangers to the intended, ordinary, reasonable or reasonably foreseeable user or consumer using the product in its intended, reasonable and reasonably foreseeable use outweighed the burden or costs of Defendant taking precautions to eliminate or substantially reduce the likelihood that said dangers would present themselves to the intended, ordinary or reasonably foreseeable users while using the subject product, in its intended, reasonable and reasonably foreseeable uses.

64.  Because the subject product, was designed, manufactured, distributed and sold with the existence of the aforesaid dangers which were unknowable and unacceptable to the average or ordinary consumer using the subject product, in the

19

intended, reasonable and reasonably foreseeable uses of the subject product, and a reasonable person would conclude that the probability and seriousness of harm created by the aforesaid dangers to the intended, ordinary, reasonable or reasonably foreseeable user or consumer using the product in its intended, reasonable and reasonably foreseeable users or consumers outweighed the burden or costs of Defendant taking precautions to eliminate or substantially reduce the likelihood that said dangers would present themselves to the intended, ordinary or reasonably foreseeable users while using the subject product, in its intended, reasonable and reasonably foreseeable uses, the subject product, was designed, manufactured, distributed and sold in a defective condition unreasonably dangerous to the intended, ordinary or reasonably foreseeable users while using the subject product, in its intended, reasonable and reasonably foreseeable uses.

65.  The subject product, was designed, manufactured, marketed, distributed, supplied, advertised, maintained, installed, serviced, repaired, leased and/or sold by Defendant in a defective condition unreasonably dangerous for unsafe for its intended or reasonably foreseeable uses and in a condition unreasonably dangerous to the user or consumer, which in this case is the Decedent.

66.  The Defendant failed to provide proper and adequate warnings to Decedent and Decedent's employer of the inherent and reasonably foreseeable dangers in the use of the subject product.

67.  The Defendant failed to provide proper and adequate instructions to Decedent and Decedent's employer of the safe and proper use of the subject product.

68.   By failing to provide proper and adequate warnings and instructions to the Decedent and Decedent's employer as aforesaid, Defendant designed, manufactured, marketed, distributed, supplied, advertised, maintained, serviced, repaired, installed, leased and/or sold said subject product, in a defective condition unreasonably dangerous to the user or consumer, which in this case is the Decedent.

69.   At all times relevant hereto, the existing, known or foreseeable dangers as aforesaid posed by the subject product, could have been reduced or avoided by Defendant by the adoption of a reasonable alternative design and the omission of said alternative design rendered said subject product, defective and unreasonably dangerous.

70.   At all times relevant hereto, the foreseeable risks of harm posed by the subject product, could have been reduced or avoided by the provision of reasonable instructions or warnings by Defendant, and the omission of the instructions or warnings rendered the subject product, defective and not reasonably safe.

71.   The injuries and damages to Decedent and Plaintiff, as more fully set forth in Count I above, were directly, proximately, substantially, and legally caused by the defective and unreasonably dangerous condition of the subject product.

72.   Defendant is strictly liable to Plaintiff pursuant to Restatement (Second) of Torts, Section 402(A) as interpreted and modified by the Pennsylvania Supreme Court in *Tincher v. Omega Flex*, 2014 Pa. LEXIS (Pa. 2014).

73.   At all times relevant hereto, Defendant knew, or had reason to know of the defective and unreasonably dangerous condition of the subject product.

74. At all times relevant hereto, Defendant designed, fabricated, manufactured, marketed, distributed, serviced, installed, supplied, leased and/or sold said subject product, in conscious disregard of, or reckless indifference to the high degree of risk of harm to the user of the product posed by the defective and unreasonably dangerous condition thereof.

WHEREFORE, Plaintiff, Jane L. Deutsch, Executrix of the Estate of Frank W. Deutsch, III, demands judgment against Defendant, The Toro Company, in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00) plus delay damages, costs of suit and punitive damages.

## COUNT III

### Jane L. Deutsch, Executrix of the Estate of Frank W. Deutsch, III
v.
### The Toro Company

### (WRONGFUL DEATH ACTION)

75. Plaintiff, Jane L. Deutsch, Executrix of the Estate of Frank W. Deutsch, III, incorporates by reference all preceding paragraphs of this Complaint as if fully set forth at length herein.

76. As a result of the negligence, carelessness and recklessness and strict liability of Defendant as aforesaid, and Decedent's injuries and death therefrom, Plaintiff, as Executrix of the Estate of Decedent, has been and may be in the future obligated to expend various and diverse sums of money for, *inter alia*, funeral expenses, medical expenses, and expenses of administration of the Estate of Decedent and for which Plaintiff has a claim for under the Wrongful Death Act against Defendant pursuant to 42 P.S. §8301.

77.  On many occasions prior to Decedent's death, Plaintiff, the aforesaid wrongful death beneficiary, received contributions for housing, food, clothing, other essentials, medical care, entertainment, gifts, education, and recreation from Decedent.

78.  As a result of Defendant's aforesaid negligence, carelessness and recklessness and strict liability and Decedent's death therefrom, the aforesaid wrongful death beneficiary has been deprived of contributions for housing, food, clothing, other essentials, medical care, entertainment, gifts, education, and recreation that would have been made to her by Decedent, but for Decedent's death, for the remainder of her natural life, to her great damage and detriment, and for which Plaintiff, as Executrix of the Estate of Decedent, has a claim under the Wrongful Death Act on her behalf against Defendant pursuant to 42 P.S. §8301.

79. On many occasions prior to his death, Decedent provided society, companionship, love, support, tutelage, guidance, moral upbringing and comfort to the aforesaid wrongful death beneficiary and she has been deprived of the society, companionship, love, support, tutelage, guidance, moral upbringing and comfort that she would have received from Decedent throughout the remainder of her natural life, to her great damage and detriment, and for which Plaintiff, as Executrix of the Estate of Decedent, has a claim under the Wrongful Death Act on her behalf against Defendant pursuant to 42 P.S. §8301.

80.  As a direct and proximate result of Decedent's death, the aforesaid wrongful death beneficiary has experienced tremendous grief and emotional suffering and pain, grief, pain and suffering she will experience throughout the reminder of her natural life, to her great damage and detriment, and for which Plaintiff, as Executrix of the Estate of

Decedent, has a claim under the Wrongful Death Act on her behalf against Defendant pursuant to 42 P.S. §8301.

                                        **COHEN, FEELEY, ALTEMOSE & RAMBO, P.C.**

BY:_____
                Mark K. Altemose, Esquire
                I.D. No. 58939
                2851 Baglyos Circle
                Bethlehem, PA  18020
                (610) 625-2100
                maltemose@cohenfeeley.com
                ***Attorney for Plaintiffs***

24